**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **JOSEPH L. GERALD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. 1:18-cv-1154 (TSE/TCB) |
| v. ) | |
| ) | |
| **DIVERSIFIED PROTECTION** ) | |
| **CORPORATION, et al.,** ) | |
| *Et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO DISMISS OF THE DEFENDANT DIVERSIFIED PROTECTION CORPORATION</u>

Defendant Diversified Protection Corporation ("DPC"), by counsel, moves to dismiss the Complaint ("Compl.") pursuant to Rule 12(b)(6), Fed.R.Civ.P., and hereby submits its Memorandum of Points and Authorities in support of its motion, as follows:

## <u>BACKGROUND</u>

Joseph L. Gerald ("Plaintiff") filed suit against DPC alleging that it breached the terms of its Collective Bargaining Agreement in terminating his employment (Count 1 – Breach of Contract) and wrongfully terminated him in violation of public policy (Count 3 – Wrongful Termination). Plaintiff also asserted a claim against Defendant Security, Police and Fire Professionals of America ("SPFPA") for breach of duty of fair representation (Count 2).

DPC has a contract with the Environment Protection Agency ("EPA"). Compl. at ¶ 4. DPC employed Plaintiff as a guard at the EPA facility in Crystal City, Virginia, until his termination on April 27, 2018. *Id.*

SPFPA is the bargaining representative for employees of DPC, including Plaintiff. *Id.,* at ¶ 6. The relationship between DPC and the SPFPA is governed by a Collective Bargaining Agreement. *Id.,* at ¶ 7. The Collective Bargaining Agreement ("CBA") in effect from September 30, 2014 through September 29, 2017 is attached as Exhibit A. Declaration of Nathaniel White ("Decl."), at ¶¶ 2 and 3. A new collective bargaining agreement did not become effective until July 29, 2018. *Id.* at ¶ 4, Exhibit B hereto.

On April 6, 2018, Plaintiff was working at the command center at the EPA facility. *Id.,* at ¶ 12. While on duty, Plaintiff noticed a reduction in his paycheck and used his cell phone to call his bank. *Id.,* at ¶¶ 12 and 13. During the phone call, an EPA representative noticed that Plaintiff was using his cell phone. *Id.,* at ¶ 13. Thereafter, the DPC project manager Major Hoover, demanded that Plaintiff provide a written statement of his activities on April 6, 2018. *Id.,* at ¶ 14. On April 10, 2018, DPC placed Plaintiff on suspension for approximately two weeks while it investigated the April 6, 2018, incident. *Id.,* at ¶ 15.

On April 27, 2018, DPC terminated Plaintiff. *Id.,* at ¶ 18. "The reasons given to Plaintiff for his termination were that he possessed a personal electronic device on post, and was inattentive to duty." *Id.* According to Plaintiff, the second charge was not established by the investigation. *Id.*

## ARGUMENT

**I.  STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson*

*v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 1950 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 1949. "[F]or the purposes of a motion to dismiss . . . we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50 (internal quotation marks omitted)).

On a motion to dismiss, the court is typically limited to reviewing the four corners of the complaint. However, "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment." *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995); *see also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)(a court may consider it in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity). Here, Count 1 of the Complaint is based upon the CBA between DPC and SPFPA. However, a copy of the CBA was not attached to the Complaint. Compl. at ¶¶ 27 and 28. As the CBA is integral to Count 1 (and Count 2), it is proper to attach a copy of the CBA to this motion and proper for the Court to consider it as part of the motion without converting the motion to one for summary judgment.

## II. COUNT 1 FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

There is no independent cause of action by an employee against the employer for breach of a collective bargaining agreement. As this Court has recognized, "[a]s a preliminary matter, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts any state law cause of action that is substantially dependent upon analysis of the terms of a collective bargaining agreement." *Hope v. Continental Baking Co.*, 729 F.Supp. 1556, 1558 (E.D. Va. 1990) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). However, courts have recognized that an employee can pursue what is known as a "hybrid Section 301" action against an employer.

In pursuing a hybrid Section 301 action under the Labor Management Relations Act, Plaiontiff essentially must prove two causes of action: (1) the employer's breach of the CBA; and (2) the union's breach of its duty to provide the employee with fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). "[T]he two claims are inextricably interdependent." *Id.* To prevail against DPC, Plaintiff "must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *Id.* at 165 (citing *United Parcel Service v. Mitchell*, 451 U.S. 56, 66-67 (1981)). Although Plaintiff has asserted both that DPC breached the CBA (Count 1) and that SPFPA breached its duty of fair representation (Count 2), his factual allegations are not sufficient to establish either claim.

### A. There Was No CBA At The Time Of Plaintiff's Termination

Plaintiff specifically acknowledges in the Complaint that he was advised by a representative of SPFPA that "there was no Collective Bargaining Agreement in force" at the

4

time of his termination.  Compl., at ¶ 16.  This was an accurate statement.  The CBA in effect during Plaintiff's employment expired on September 29, 2017.  Exhibit A.  A new CBA did not become effective until July 29, 2018.  Exhibit B; Decl., at ¶ 4.  From September 30, 2017 until July 29, 2018, there was no collective bargaining agreement in place.

It is well settled by the Supreme Court that, "[a] postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 205–06, 111 S. Ct. 2215, 2225, 115 L. Ed. 2d 177 (1991).

None of factors discussed in *Litton* are present here to support the post-expiration enforcement of the CBA.  The facts and circumstances of Plaintiff's termination arose in April of 2018, after the expiration of the CBA.  Compl. at ¶¶ 15 through 18.  The language of the expired CBA does not create an accrued or vested right in the Discharge and Discipline process found in Article 12 of the CBA.  Exhibit A, at p. 15.  Finally, there is no language in the CBA which provides that Article 12 survives the expiration of the agreement.

Given that the CBA had expired at the time of the events alleged in the Complaint, there can be no basis for Plaintiff's claim that DPC breached the CBA.  Accordingly, DPC respectfully requests that the Court dismiss Count 1 with prejudice.

### B. Plaintiff Cannot Challenge His Termination Under The CBA, Thus There Is No Breach Of The CBA

In the alternative, should the CBA be found to be in effect at the time of Plaintiff's termination, he nevertheless cannot state a claim for breach. Article 12 of the CBA addresses "Discharge and Discipline." Exhibit A, p. 15. In pertinent part, Article 12 provides that, "[n]o employee shall be discharged or disciplined without just cause, and discipline and discharge matters shall be subject to the grievance and arbitration procedures contained in Article 13 of this Agreement." *Id.* Presumably, this is the section of the CBA claimed by Plaintiff to have been breached by DPC.

Article 12 limits the authority of an arbitrator to provide relief under the exclusive arbitration procedures set forth in Article 13 of the CBA. Specifically, in addressing the arbitration procedures, Article 12, Section 12.1 states, "[h]owever, an arbitrator shall not have the authority to reduce a discharge or otherwise modify the penalty imposed by the Company for a proven violation of any of the following:" *Id.* The restricted list includes conducting "personal affairs" while on duty. *Id.* Article 12, Section 12.1(B) provides that the "term 'personal affairs' as used in this paragraph does not include the making of telephone or other inquiries concerning the status of children or family members or the provisions of their care provided that such activities have been approved by the employee's supervisor." The restricted list at Article 12, Section 12.1(C) also includes the "use or display (in plain sight)" of cellular phones. *Id.* In other words, under the CBA an arbitrator does not have the authority to reduce a discharge based upon a proven violation of conducting "personal affairs" while on duty or the use or display of a cell phone while on duty. Nevertheless, those are the two conduct violations that Plaintiff admits to in the Complaint.

In the Complaint, Plaintiff admits that he used his cell phone while on duty in the command center at the EPA facility. Compl., at ¶¶ 12 and 13. He also admits that an EPA official saw him using the cell phone. *Id.,* at ¶ 13. These allegations clearly establish that Plaintiff engaged in conduct subject to Section 12.1(C) of the CBA – "use or display (in plain sight)" of a cell phone.

Further, Plaintiff admits that he engaged in "personal affairs" while on duty as defined in Section 12.1(B) of the CBA. The Complaint alleges that Plaintiff "telephoned his bank regarding the anticipated shortage in his pay." Compl., at ¶ 13. Clearly, personal banking is a personal affair, even if it was necessitated by a reduction in Plaintiff's paycheck as alleged. Compl., at ¶ 12. The only exception made under the CBA is the use of a "telephone or other inquiries concerning the status of children or family members . . ." Exhibit A, p. 15, Section 12.1(B). According to the Complaint, DPC terminated Plaintiff for these two offenses. Compl., at ¶¶ 18, 19 and 20.

The plain language of the CBA limits the authority of an arbitrator to "reduce a discharge" for the two offenses admitted by Plaintiff in the Complaint. Although Plaintiff alleges that under the DPC written employment policies use of a cell phone on duty was not a terminable offense, the Complaint does not make a claim for breach of contract based on the alleged employment policies. The Complaint asserts a claim only for breach of the CBA. Compl., at ¶¶ 27 and 28. Specifically, Plaintiff alleged that, "as a member of the bargaining unit, [he] had an enforceable expectation that his employment would continue according to the terms of the CBA." *Id.,* at ¶ 27. Under the terms of the CBA, Plaintiff has no recourse for terminations based on proven conduct identified in Section 12.1(B), "personal affairs," and 12.1(C), use of a cell phone. As Plaintiff admitted to such conduct, there is no question that his

7

violations are proven.  There is also no question, under the clear terms of the CBA, that he had no recourse to challenge his termination based on this conduct.  Thus, there can be no breach of the CBA.

### C. SPFPA Did Not Breach Its Duty Of Fair Representation

Moreover, given the clear language of the CBA, SPFPA did not breach its duty of fair representation.  First of all, the CBA was not in effect at to the time of Plaintiff's termination.  Plaintiff admits that a representative of SPFPA told him as such.  Compl. at ¶ 16.  Further, Plaintiff alleges that "had the Union pursued his grievance with reasonable diligence as required by the duty of fair representation, his termination would have been rescinded and he would have been reinstated, with back pay . . ."  Compl. at ¶ 32.  Had SPFPA pursued Plaintiff's grievance through the grievance procedure required by the CBA, mandatory arbitration would have been the final step of the process.  Exhibit A, at p. 19, Section 13.7.  However, as discussed above, under the terms of the CBA the arbitrator would have had no authority to rescind the termination based on the proven violations of Sections 12.1(B) and 12.1(C).  Had SPFPA pursued the grievance through arbitration, the CBA restricted the arbitrator from rescinding the termination.  SPFPA is not required to pursue all grievances.  The CBA provides that is "has the responsibility for reviewing and submitting only those grievances that are considered to have validity in its good faith judgment."  Exhibit A, p. 18, Section 13.1.  Given that the CBA prohibited an arbitrator from reinstating Plaintiff based on his violations, SPFPA did not breach its duty of fair representation by failing to pursue a grievance that could provide Plaintiff with no relief under the CBA.

### D. <u>Conclusion</u>

Under a hybrid Section 301 action, Plaintiff must establish both that DPC breached the terms of the CBA <u>and</u> that SPFPA breached its duty of fair representation. There was no CBA in effect at the time of Plaintiff's termination. Moreover, based on the language of Section 12.1 of the CBA, which limits the ability of an arbitrator in the grievance process to reduce a termination based upon the admitted conduct of Plaintiff, the Complaint fails to state a claim for a hybrid Section 301 claim against DPC. Wherefore, DPC respectfully requests that the Court grant its motion and dismiss Count 1 with prejudice.

## III. <u>COUNT 3 FAILS TO STATE A CLAIM FOR WRONGFUL TERMINATION</u>

Count 3 of the Complaint alleges that DPC terminated Plaintiff, "in retaliation for his insistence that defendant comply with federal law and regulations . . . as alleged in paragraph 11" of the Complaint. Compl., at ¶ 35. Paragraph 11 of the Complaint references the "procurement ethics regulations, including but not limited to 48 CFR §45-509.2." At the outset, there is no 48 CFR §45-509.2. The citations under Part 45 range from 48 C.F.R. § 45.501 through § 45.503. Further, Part 45 of the Code of Federal Regulations addresses issues with the use of government property in the performance of government contracts, not ethics issues. Procurement integrity is governed by the Procurement Integrity Act, codified at 41 U.S.C. § 2101, *et seq.* However, the allegation that Captain Gordon pressures employees, including Plaintiff, to purchase food from her, fails to state a violation of the Procurement Integrity Act. Moreover, assuming *arguendo* a violation was stated, neither Part 45 of the Federal Regulations nor the Procurement Integrity Act provide for a private right of action of retaliation for reporting alleged violations.

Virginia strongly adheres to the common-law employment-at-will doctrine. *Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 96–98 (1996).  However, the Virginia Supreme Court has recognized narrow public policy exceptions to this doctrine.  *Bowman v. State Bank of Keysville,* 229 Va. 534, 535 (1985).  The narrow exceptions recognized by *Bowman* and its progeny involve Virginia public policy, not the type of federal contracting issues asserted in the Complaint.  Thus, Count 3 also fails to state a claim for wrongful termination under Virginia common law.

## CONCLUSION

WHEREFORE, for the foregoing reasons, DPC respectfully requests that this Court enter an order granting its motion and dismiss it from this matter with prejudice.

Respectfully submitted,

*/s/ Michael E. Barnsback*
Michael E. Barnsback (VA Bar No. 33113)
O'HAGAN MEYER, PLLC
2560 Huntington Avenue
Suite 204
Alexandria, VA 22303
(703 775-8603
mbarnsback@ohaganmeyer.com
aheerink@ohaganmeyer.com
*Counsel for Defendant Diversified Protection Corporation*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of November, 2018, a true and complete copy of the foregoing has been filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Michael E. Barnsback*
Michael E. Barnsback (VA Bar No. 33113)
O'HAGAN MEYER, PLLC
2560 Huntington Avenue
Suite 204
Alexandria, VA 22303
(703 775-8603
mbarnsback@ohaganmeyer.com
*Counsel for Defendant Frenkel Lambert Weiss Weisman & Gordon, LLC*