## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| JOSEPH L. GERALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-01154 (TSE/TCB) |
| | ) | |
| DIVERSIFIED PROTECTION | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Diversified Protection Corporation's ("DPC") Corrected Motion to Dismiss (Dkt. 7) and Security, Police, and Fire Professionals of America's ("SPFPA") Motion to Dismiss (Dkt. 16).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends, for the following reasons, that Defendant DPC's Motion to Dismiss be GRANTED, that Plaintiff be granted leave to amend Count II, and that Defendant SPFPA's Motion to Dismiss be DENIED WITHOUT PREJUDICE.

### I. PROCEDURAL BACKGROUND

On September 11, 2018, Plaintiff commenced this action against DPC and SPFPA alleging three counts. Counts I and II comprise what is commonly known as a section 301 hybrid claim: breach of the CBA by DPC and breach of the duty of fair representation by SPFPA. Count III, a state law claim, alleges Defendant DPC wrongfully terminated Plaintiff in violation of public

---

1. Relevant filings before the Court include the Complaint (Dkt. 1) ("Compl."); DPC's Corrected Motion to Dismiss (Dkt. 7) ("DPC Mot. to Dismiss"); Memorandum of Points and Authorities in Support of the Motion to Dismiss of the Defendant DPC (Dkt. 9) ("DPC Mem. Supp."); Plaintiff's Memorandum Opposing Motion to Dismiss (Dkt. 11) ("Pl.'s DPC Opp'n"); Reply Memorandum in Support of the Motion to Dismiss of the Defendant DPC (Dkt. 12) ("DPC Reply"); SPFPA Motion to Dismiss (Dkt. 16) ("SPFPA Mot. Dismiss"); Brief in Support of Defendant SPFPA's Motion to Dismiss (Dkt. 16-1) ("SPFPA Mem. Supp."); Plaintiff's Memorandum Opposing Motion to Dismiss (Dkt. 23) ("Pl.'s SPFPA Opp'n"); and all attachments and exhibits submitted with those filings.

policies defined in federal and state laws.

On November 5, 2018, Defendant DPC moved to dismiss the complaint in its entirety for failure to state a claim. After a complete round of briefing, the parties appeared before the District Judge on November 30, 2018, for a hearing on Defendant DPC's motion to dismiss. At the conclusion of the hearing, the District Judge took the matter under advisement. On February 5, 2019, the District Judge referred the motion to dismiss to the undersigned to prepare and issue a report and recommendation. On February 7, 2019, Defendant SPFPA filed a separate motion to dismiss, which the District Judge subsequently referred to the undersigned. The undersigned then held an additional hearing on April 1, 2019, on both Defendants' motions to dismiss.

## II. STATEMENT OF FACTS

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true Plaintiff's well-pleaded allegations and draws all reasonable inferences in the light most favorable to him. *See T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v, Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court's analysis at this stage is typically informed and constrained by the four corners of the complaint. *See CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). However, the Court may consider documents attached or incorporated into the complaint, *see E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011), as well as those documents attached to a motion to dismiss, *see Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (finding that the court could consider a newspaper article, which was not attached to the plaintiff's complaint, at the 12(b)(6) stage because "(1) it was attached to [defendant's] motion to dismiss, and is clearly integral to, and was relied upon in, [plaintiff's] complaint; and (2) [plaintiff] does not dispute its authenticity" (citations omitted)).

Therefore, upon a review of the pleadings and filings in this case, the undersigned makes the following relevant findings of fact.

Plaintiff worked as a guard at the United States Environmental Protection Agency in Crystal City, Virginia ("EPA Site"). (Compl. ¶ 4.) He performed guard duties at the EPA site for at least seven (7) years with a strong record of performance and no history of discipline. (*Id.* ¶ 8.) During that seven-year period, Defendant DPC (or its predecessor) employed Plaintiff. (*Id.*) Defendant DPC is a Nevada corporation and provides guard services at the EPA site pursuant to a contract with the EPA as well as other government entities. (*Id.* ¶¶ 4-5.) Defendant SPFPA is a labor organization and served as the bargaining representative for Plaintiff and others employed by Defendant DPC at the EPA site. (*Id.* ¶ 6.)

The relationship between DPC and SPFPA is governed by a series of Collective Bargaining Agreements ("CBA"). (*Id.* ¶ 7.) The first CBA was effective from September 30, 2014 through September 29, 2017. (DPC Mem. Supp., Ex. A.) The first CBA contained a discharge and discipline provision as well as a grievance and arbitration procedure provision. (*Id.*, Ex. A, arts. 12-13.) Nothing in the first CBA indicated that either of those provisions were to remain effective after the CBA's expiration. Once the first CBA expired on September 29, 2017, DPC and SPFPA did not immediately enter into a new CBA. Instead, nearly a year passed before the second CBA became effective on July 29, 2018. (*Id.*, Ex. B.)

On April 6, 2018, Plaintiff reported for work at the EPA site. (*Id.* ¶ 12.) While stationed in the EPA site's command center, Plaintiff received notification that his pay had been directly deposited into his bank account, as was customary. (*Id.*) Upon inspection, Plaintiff realized his pay had unexpectedly been reduced by more than half. (*Id.*) Plaintiff immediately set about notifying his bank and vendors that his account would lack the necessary funds to satisfy upcoming

3

automatic payments. (*Id.*) As part of his efforts, Plaintiff telephoned his bank to notify them about the unanticipated decrease in his paycheck. (*Id.* ¶ 13.) While on hold waiting to speak with a bank representative, an EPA representative entered the command center and saw Plaintiff on his cellphone. (*Id.*) Subsequently, the EPA representative presumably reported Plaintiff's activities to Defendant DPC's project manager, Major Hoover, who directed Plaintiff to provide a written statement. (*Id.* ¶ 14.) Plaintiff complied with that request and prepared a written report describing his conduct on April 6, 2018. (*Id.*)

On April 10, 2018, Defendant DPC suspended Plaintiff for approximately two (2) weeks. (*Id.* ¶ 15.) Upon suspending Plaintiff, Defendant DPC conducted an investigation into the events of April 6, 2018. (*Id.*) Throughout the course of Plaintiff's suspension, Plaintiff requested that Defendant SPFPA's representative, Joseph McCray, process a grievance for Plaintiff. (*Id.* ¶ 16.) Mr. McCray repeatedly stated that he had attempted to resolve the issue between Plaintiff and Defendant DPC but could not due to the lack of an effective collective bargaining agreement. (*Id.*) Mr. McCray also made references to Plaintiff's disciplinary record as another reason for why he could not resolve the situation between Plaintiff and Defendant DPC. (*Id.*) Mr. McCray harbored substantial animosity toward Plaintiff for reasons arising outside of the workplace and personal to Mr. McCray. (*Id.*) This animosity stems from Plaintiff's involvement with, and contribution to the dissolution of, Mr. McCray's marriage. (*Id.* ¶ 24.)

On April 27, 2018, Defendant DPC terminated Plaintiff's employment. (*Id.* ¶ 18.) The reasons provided for Plaintiff's termination were twofold: (1) use of a personal cellular phone on post and (2) being inattentive to duty. (*Id.*) Plaintiff alleges the second charge is completely baseless as it is includes several unfounded assertions. (*Id.* ¶¶ 18, 21.) Plaintiff alleges his termination constitutes a material breach of the CBA. (*Id.* ¶ 28.) Moreover, Plaintiff alleges that

4

his firing was in retaliation for his complaints regarding violations of federal and state laws, including wage and hour laws. (*Id.* ¶ 22.)

Plaintiff also alleges Defendant SPFPA breached its duty of fair representation by failing to pursue a grievance on Plaintiff's behalf. (*Id.* ¶¶ 24, 31.)

### III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.*

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *Kolon*, 637 F.3d at 440). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely,'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), so long as the

complaint states a claim that is "plausible" and not merely "conceivable," *id.* at 570.

## IV.  ANALYSIS

### A.  Counts I & II (Both Defendants)

**1.  Breach of Contract**

Defendant DPC argues that the breach of contract claim against them should be dismissed because no contract existed at the time of Plaintiff's termination. Alternatively, Defendant DPC also argues that even if the CBA was in effect, it would not entitle Plaintiff to any relief. (DPC Mem. Supp. at 4-8.) The undersigned agrees with DPC's first contention and finds that an expired CBA cannot support a breach of contract claim in this instance.

Plaintiff alleges a hybrid section 301 claim. In a hybrid claim, a plaintiff may sue both his employer for breach of the collective bargaining agreement and his union for breach of the duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). In order to prevail on a hybrid claim, a plaintiff must show, in part, that their "discharge was contrary to the contract." *Id.* at 165 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 61 (1981) (Stewart, J., concurring in the judgment)).

It is generally well understood that an expired CBA is no longer enforceable as a contract. As the Supreme Court explained:

> [A]n expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied. Although after expiration most terms and conditions of employment are not subject to unilateral change, in order to protect the statutory right to bargain, those terms and conditions no longer have force by virtue of the contract.

*Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991) (citations omitted). However, under some circumstances, certain sections of an expired CBA may still be enforced as a contract. *See Nolde Bros., Inc. v. Local 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 254-55

(1977). But that exception often only applies when a dispute "arise[s] under the contract." *Litton*, 501 U.S. at 206. A grievance only arises under the contract where "[1] it involves facts and occurrences that arose before expiration, [2] where an action taken after expiration infringes a right that accrued or vested under the agreement, [3] or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.*

In a similar case to the one at bar, the Fourth Circuit applied this standard and found an employee's termination was not subject to arbitration following the CBA's expiration. In *HCMF Corp. v. District 28, UMWA,* the defendant dismissed a union worker for a work-place incident. 117 F.3d 1413 (Table), 1997 WL 382026, at \*1 (4th Cir. July 9, 1997) (per curiam) (unpublished). The CBA had expired nine (9) months prior to the worker's termination and the parties did not enter into a new CBA until approximately four (4) months post-termination. *Id.* at \*1-2. The Fourth Circuit concluded that the worker could not submit her dismissal to arbitration because her "dismissal was performance related and involved facts and occurrences that arose nine months after the CBA's expiration date" and thus did not arise out of the CBA. *Id.* at \*2. Other circuits have similarly found that termination protections do not survive the expiration of a CBA. *See Int'l Bhd. of Elec. Workers, Local 1200. v. Detroit Free Press*, 748 F.3d 355, 358-59 (D.C. Cir. 2014) (finding that seniority protections did not accrue and were not subject to arbitration following CBA's expiration); *S. Central Power Co. v. Int'l Bhd. of Elec. Workers, Local Union 2359*, 186 F.3d 733, 740-41 (6th Cir. 1999) (holding that the "majority of the material facts and circumstances leading up the [employee's] termination" must occur prior to the CBA's expiration in order to invoke the "exception to the general principle that the obligation to arbitrate grievances does not continue in effect after the agreement expires"); *McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1119

(7th Cir. 1998) (noting, under most circumstances, plaintiff would not be entitled to submit his termination grievance to arbitration because the CBA expired prior to his termination); *Trinidad Corp. v. Nat'l Mar. Union of Am., Dist. No. 4*, 81 F.3d 769, 773 (8th Cir. 1996) (noting the parties agreed that two grievances, which involved facts and circumstances occurring after the CBA's expiration, did not need to be submitted to arbitration as those grievances did not "arise under" the agreement). Therefore, Plaintiff can only withstand Defendant DPC's 12(b)(6) motion if the complaint sufficiently alleges that his termination arises under the CBA.

Plaintiff, by his own account, is not seeking to compel arbitration nor is he alleging that Defendant DPC breached the CBA by refusing to arbitrate.[2] (Hr'g Tr. 13:10, Nov. 30, 2018.) Instead, Plaintiff argues that Defendant DPC breached the CBA by terminating his employment without just cause.[3] (Pl.'s DPC Opp'n at 3-8.) Nonetheless, the undersigned finds that the *Litton* "arise under" standard should still apply to determining whether the CBA's just cause requirement remains enforceable as a contract provision. *See, e.g., Int'l Bhd. of Teamsters, Local Union 1199 v. Pepsi-Cola Gen. Bottlers, Inc.*, 958 F.2d 1331, 1334 (6th Cir. 1992) (applying *Litton* in finding the right to be discharged only for just cause generally does not survive the expiration of a collective bargaining agreement). The alleged dispute unquestionably took place well after the first CBA expired. Moreover, the right to be discharged for just cause is not a right that accrues or vests under an agreement. *See Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc.*, 795

---

2. For the sake of completeness, the undersigned also finds that the arbitration clause no longer possessed any effectiveness at the time of Plaintiff's termination because (1) the CBA had expired and (2) Plaintiff's dispute did not 'arise under' the CBA.

3. Plaintiff spends a significant portion of his opposition to Defendant DPC's motion discussing the existence and binding effect of DPC's "Cell Phone & Electronic Device Policy." (Pl.'s DPC Opp'n at 6-8.) The undersigned understands Plaintiff's argument to be that the underlying cell phone policy serves as further proof that his termination was without just cause in contravention of Article 12 of the first CBA.

F.2d 1400, 1404 (8th Cir. 1986) (en banc) ([T]he right to be discharged for just cause . . . is strictly a creature of the collective bargaining agreement and its life as a matter of contract does not extend beyond contract expiration."). It follows, therefore, that Plaintiff's discharge did not violate an accrued or vested right. Accordingly, Plaintiff's breach of contract claim must fail because his grievance does not arise under the expired CBA.

Plaintiff, recognizing the problems posed by *Litton*, attempts to argue that since DPC did not bargain to an impasse the expired CBA remains in full force and effect. (Pl.'s DPC Opp'n at 2-3; Hr'g Tr. 6:17-7:5, Nov. 30, 2018.) This argument misses the mark. "It is true that the parties must maintain the *status quo* until they have negotiated to impasse, and an employer's unilateral change of terms and conditions of employment during this process constitutes a failure to bargain in good faith under NLRA section 8(a)(5)." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 26 (2d Cir. 1988) (citing *NLRB v. Katz*, 369 U.S. 736, 743 (1962)). However, while failure to maintain the status quo may very well result in an unfair labor practice charge, that is often the extent of an expired CBA's significance. *Litton*, 501 U.S. at 206 ("Although after [a CBA's] expiration most terms and conditions of employment are not subject to unilateral change, in order to protect the statutory right to bargain, *those terms and conditions no longer have force by virtue of the contract*." (emphasis added) (citations omitted)). Frequently, employers will continue to operate according to expired agreements so as to avoid an unfair labor practice lawsuit. *See Detroit Free Press*, 748 F.3d at 358-59. Although companies may continue to adhere to an expired CBA, that does not reanimate what otherwise would be a terminated contract. *See id.* at 359; *Derrico*, 844 F.2d at 27 (holding that the requirement to bargain to impasse did not cause "the for-cause limitation" to remain "in effect after the CBA's termination").

Plaintiff fails to persuade the undersigned that Defendant DPC's purported failure to

9

bargain to impasse grants Plaintiff the ability to enforce the expired CBA as a contract. As the Supreme Court stated, and Plaintiff acknowledges in his brief, (Pl.'s DPC Opp'n at 3), in the absence of an effective CBA, "a party may be relegated to filing unfair labor practice charges." *Litton*, 501 U.S. at 201. DPC's potential unfair labor practices do not entitle Plaintiff to enforce the expired CBA. Instead, Plaintiff's remedy in this instance was to file an unfair labor practice charge with the NLRB.

Accordingly, the undersigned recommends that the Court dismiss Count One.

**2. Duty of Fair Representation**

Defendant SPFPA argues that Plaintiff's failure to prevail on the first prong of his hybrid claim (breach of contract) necessarily results in a finding that SPFPA did not breach its duty of fair representation. (SPFPA Mem. Supp. at 2.) The undersigned agrees, in part, but finds that Plaintiff may be able to allege a standalone claim for breach of the duty of fair representation.

As noted previously, Plaintiff alleges a section 301 hybrid claim. In order to obtain relief on that type of claim, a plaintiff must necessarily establish that (1) the employer breached the collective bargaining agreement <u>and</u> (2) the union breached its duty of fair representation. *See DelCostello*, 462 U.S. at 164. These "two claims are inextricably interdependent." *Id.* (quoting *Mitchell*, 451 U.S. at 66-67). Therefore, failure to carry the burden of establishing either of these two claims will doom a hybrid claim.

Here, the undersigned has already found that Plaintiff failed to establish that Defendant DPC breached the CBA. As a result, Plaintiff's claim against SPFPA must fail. This is clear. What is not immediately clear, however, is the proper 12(b) standard to apply.[4] *See, e.g., Derrico*, 844

---

4. Both DPC and SPFPA only moved to dismiss pursuant to 12(b)(6). (DPC Mem. Supp. at 1; SPFPA Mem. Supp. at 1.) However, because subject-matter jurisdiction "cannot be conferred by the parties, nor a defect in subject-matter jurisdiction be waived by the parties. . . . questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court." *Brickwood Contractors, Inc. v.*

F.2d at 25 ("When a complaint alleges a claim based on events occurring after the expiration of a collective bargaining agreement, courts have held that section 301 cannot provide a basis for jurisdiction." (citations omitted)); *Tillery v. Wash. Post*, No. Civ. A. 04-2258 RLJ, 2006 WL 709805, at *2-3 (D.D.C. Mar. 13, 2006) (dismissing plaintiff's hybrid claim for lack of subject-matter jurisdiction after finding complained of conduct occurred two (2) days after the CBA expired), *aff'd*, 232 F. App'x 1 (D.C. Cir. 2007). Section 301(a) of the Labor Management Relations Act confers federal subject-matter jurisdiction over "suits for violations of contracts." *See Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am.*, 523 U.S. 653, 656-57 (1998) (quoting 29 U.S.C. § 185(a)). As a result, courts disagree on whether dismissal is appropriate under Rule 12(b)(1) for lack of subject-matter jurisdiction or under Rule 12(b)(6) for failure to state a claim when a plaintiff fails, for instance, to allege the existence of a valid collective bargaining agreement (i.e. valid contract).

As an initial matter, the undersigned could not locate a Fourth Circuit case directly on point. Although, recently, the Fourth Circuit did address a somewhat related jurisdictional question. In *Staudner v. Robinson Aviation, Inc.*, the court held an employee's failure to comply with section 301(a)'s exhaustion requirement did not bar a federal court from exercising jurisdiction. 910 F.3d 141, 146-48 (4th Cir. 2018). While indicating that the Fourth Circuit may take a more lenient approach to the jurisdictional question before the undersigned, it does not directly resolve the issue. As a result, the undersigned will turn to other circuits' decisions.

In *ABF Freight System*, the Eighth Circuit held that section 301(a) is "jurisdictional" without clearly explaining what suffices for obtaining subject-matter jurisdiction. *See ABF Freight*

---

*Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (en banc). Therefore, the undersigned believes it is necessary to examine if the lack of an effective collective bargaining agreement requires a recommendation that Plaintiff's hybrid claim be dismissed for lack of subject-matter jurisdiction.

*Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 962-63 (8th Cir. 2011). In *Rutherford v. Judge & Dolph Ltd.*, the Seventh Circuit dismissed plaintiffs' hybrid claim against their Union for lack of subject-matter jurisdiction. 707 F.3d 710, 714-16 (7th Cir. 2013). Conversely, the Sixth, Third, and D.C. Circuits all declined to find section 301(a) jurisdictional. *See Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007 (6th Cir. 2009); *see also Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Benenficial Ass'n v. Liberty Mar. Corp.*, 815 F.3d 834, 842 (D.C. Cir. 2016) (adopting Sixth Circuit's approach); *Pitt. Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 189-90 (3d Cir. 2009) (same). The Fifth Circuit, formulating a middle-way approach to this jurisdictional question, held that a plaintiff must allege a labor contract violation in order to support subject-matter jurisdiction under section 301(a), but that if a court later found "the allegedly violated contract to be non-existent or invalid, it must dismiss for failure to state a claim, not for lack of jurisdiction." *Hous. Refining, L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 400 (5th Cir. 2014) ("[A]n allegation of a labor contract violation is both necessary *and* sufficient to support subject-matter jurisdiction under section 301(a)."). The Fifth Circuit's holding relies primarily on the Supreme Court's decision in *Textron*. In that case, the Court held that the district court correctly determined it lack subject-matter jurisdiction under section 301(a) because plaintiffs only alleged that the collective bargaining agreement was invalid, not that it had been breached. *Textron*, 523 U.S. at 655-58. However, the Court cabined its holding, stating: "This does not mean that a federal court can never adjudicate the validity of a contract under § 301(a). That provision simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse." *Id.* at 657-58.

After consideration of the various circuit court opinions, the undersigned believes the best

approach to follow is that which the Fifth Circuit outlined in *Houston Refining* as that decision is most in line with the Supreme Court's holding in *Textron*. Therefore, whether 12(b)(1) or 12(b)(6) applies will depend on whether Plaintiff alleged violations of a union contract. Here, Plaintiff clearly alleged violations of a CBA. (Compl. ¶¶ 27-28.) Therefore, dismissing this claim under 12(b)(6) is proper.

The undersigned conducted the foregoing analysis in order to determine whether Plaintiff should be allowed to amend his complaint.[5] *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 502 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety.") Due to the undersigned's recommendation that the Court dismiss Count III, diversity jurisdiction pursuant to 28 U.S.C. § 1332 would similarly be lacking. As result, the Court would necessarily be forced to dismiss the entire complaint without granting Plaintiff leave to amend. *See Saxon Fibers, LLC v. Wood*, 118 F. App'x 750, 752 (4th Cir. 2005) ("[A] court without subject matter jurisdiction lacks authority to grant a party's amendment motion." (citation omitted)); *see also* Fed. R. Civ. P. 15(a)(1)(B). However, a court may, and generally is encouraged to, take a more forgiving approach when dismissing cases pursuant to 12(b)(6). "A dismissal under Rule 12(b)(6) generally is not final or on the merits and *the court normally will give plaintiff leave to file an amended complaint*," and should only refuse to when "it appears to a certainty that plaintiff cannot state a claim." *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999) (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 360-67 (2d ed. 1990)). Pursuant to Federal Rule of Civil Procedure 15(a), a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In applying this standard, the Fourth Circuit has held that "leave to amend a complaint should be denied only when [1] the amendment

---

5. While not formally filing a motion for leave to amend, Plaintiff, on numerous occasions, requested leave to amend his complaint. (Pl.'s DPC Opp'n at 15; Pl.'s SPFPA Opp'n at 5.)

would be prejudicial to the opposing party, [2] there has been bad faith on the part of the moving party, or [3] the amendment would be futile." *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 446 (4th Cir. 2001) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)).

In this instance, the Court should grant Plaintiff leave to amend his complaint. Although clearly not establishing a hybrid claim, Plaintiff's allegations potentially support a cognizable standalone claim for breach of the duty of fair representation. Unlike with hybrid claims, the existence of a valid contract is not a prerequisite for relief. In other words, a claim for breach of the duty of fair representation does not does not require "a concomitant claim against an employer for breach of contract." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 80 (1989). In fact, a fair representation claim is "judicially cognizable . . . even if the conduct complained of [is] arguably protected or prohibited by the National Labor Relations Act *and whether or not the lawsuit [is] bottomed on a collective agreement*." *Id.* at 81 (alteration in original) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 299 (1971)). As a result, courts exercise independent federal jurisdiction over fair representation claims as claims that arise under the NLRA and therefore need not be first raised with the NLRB. *Id.* at 83-84. Indeed, the Fourth Circuit recently reaffirmed the availability of a standalone claims for breach of the duty of fair representation. *See Groves v. Commc'n Workers of Am.*, 815 F.3d 177, 182-83 (4th Cir. 2016) (affirming district court's dismissal of the plaintiff's section 301 hybrid claim). Therefore, the lack of a valid contract does not invalidate a potential standalone fair representation claim.

A union breaches its duty of fair representation "if its actions are either arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)

(quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). This duty applies to all union activity. *Id.* Although not sufficient to establish a section 301 claim, DPC's complete abandonment of the arbitration and grievance procedures could be viewed as an unfair labor practice. In similar situations, unions have submitted unfair labor practice charges with the NLRB on the employee's behalf. *See, e.g., Rutherford,* 707 F.3d at 713; *Hilton-Davis Chemical Co.*, 185 N.L.R.B. 241, 241-42 (1970). Here, Plaintiff alleged that he asked the Union to process a grievance for him. (Compl. ¶¶ 16, 24.) The Union potentially refused to process the grievance due to false explanations and personal animosity from a Union representative.[6] (*Id.*) Per the allegations, it is certainly plausible that the Union's actions in this matter could be found to have been arbitrary, discriminatory, or in bad faith. Therefore, the undersigned finds that these allegations are sufficient to allow Plaintiff leave to amend the complaint as an amendment may not be futile. Moreover, there is no evidence of bad faith on behalf of the Plaintiff and there is no apparent prejudice to SPFPA.

Therefore, the undersigned recommends that Plaintiff be granted leave to amend Count II.

### B. Count III Against DPC

Defendant DPC argues that Count III should be dismissed as Plaintiff's *Bowman* claim is based on federal, not Virginia, law. (DPC Mem. Supp. at 10; DPC Reply at 4.) The undersigned agrees.

Virginia is an at-will employment state. *See Lawrence Chrysler Plymouth Corp. v. Brooks*, 465 S.E.2d 806, 808 (Va. 1996). But in *Bowman v. State Bank of Keysville*, the Virginia Supreme Court created a narrow exception to the employment-at-will rule. 331 S.E.2d 797, 801 (Va. 1985). In order to assert a *Bowman* claim, an employee must establish that his discharge was "based on violations of public policy by the defendants." *Id.* at 801. However, since *Bowman*, the Virginia

---

6. At the hearing held on November 30, 2018, Plaintiff clarified that use of the word "grievance" in the Complaint was meant to also include the filing of an unfair labor practice charge. (Hr'g Tr. 7:1-5, Nov. 30, 2018.)

Supreme Court continues to refine and narrow the applicability of this type of claim. Now, there are only three scenarios in which a *Bowman* claim may be alleged: (1) "an employer violated a policy enabling the exercise of an employee's statutorily created right;" (2) "public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy"; and (3) "discharge was based on the employee's refusal to engage in a criminal act." *Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 796 S.E.2d 188, 190-91 (Va. 2017) (internal citations and quotations omitted). Additionally, the public policy violation must be rooted in a Virginia statute, not a Federal statute or regulation. *See McCarthy v. Tex. Instruments, Inc.*, 999 F. Supp. 823, 829 (E.D. Va. 1998) ("A *Bowman* claim must find root in a *state* statute." (citation omitted)); *see also Baiden-Adams v. Forsythe Transp., Inc.*, 969 F. Supp. 2d 422, 432-33 (E.D. Va. 2013).

Plaintiff's claim clearly fails. Count III focuses solely on a now defunct federal regulation. (Compl. ¶¶ 11, 35; DPC's Mem. Supp. at 9.) However, as courts in this district have repeatedly held, a *Bowman* claim must involve a violation of Virginia state law, not federal law. *See, e.g., Baiden-Adams*, 969 F. Supp. 2d at 432-33. In reaching those decisions, the courts relied on the Virginia Supreme Court's decision in *Lawrence*. There, the Virginia Supreme Court held that the plaintiff did not "have a cause of action for wrongful discharge because he [was] *unable to identify any Virginia statute* establishing a public policy that [defendant] violated." 465 S.E.2d at 809 (emphasis added). Plaintiff requests that the Court decline to follow those earlier decisions from this district and instead apply a more qualified interpretation of *Lawrence* and other Virginia cases. (Pl.'s DPC Opp'n at 12-15.) Specifically, Plaintiff argues that the prior Eastern District of Virginia decisions are based upon too broad of a reading of *Lawrence*, as the issue of whether a federal

16

statute could serve as the basis for a *Bowman* claim was not before the Virginia Supreme Court in that case. (*Id.* at 12-13.) The undersigned is not persuaded. As previously stated, a *Bowman* claim is a "narrow" exception to the general rule. *Francis*, 796 S.E.2d 188, 190 (citations omitted). To expand *Bowman* claims to include federal statutes appears incompatible with that directive. Moreover, although *Bowman* did not specifically exclude federal statutes, it did not include them either. Subsequent Virginia Supreme Court decisions focus solely on whether plaintiff alleged a violation of a public policy clearly described in a Virginia statute. *See, e.g.*, *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711-12 (Va. 2002); *Doss v. Jamco, Inc.*, 492 S.E.2d 441, 443 (Va. 1997); *Lawrence*, 465 S.E.2d at 808-09; *cf. Bailey v. Scott-Gallaher, Inc.*, 480 S.E.2d 502, 506 (Va. 1997) (Compton, J., dissenting) ("[I]t disregards the settled law that any narrow exception to Virginia's employment-at-will doctrine must be based on a specific Virginia statute in which the General Assembly has established a public policy that the employer has contravened." (citations omitted)). Adherence to Virginia rather than federal statutory law seems particularly appropriate when viewed in light of the actions taken by the Virginia General Assembly to curtail the expansion of *Bowman* claims. If *Bowman* claims were to include federal statutes, it would presumably make it much more difficult for the General Assembly to amend the reach of *Bowman* claims like it has done previously. *See Doss*, 492 S.E.2d 441, 444-46. Therefore, the undersigned finds that a federal statute, let alone a federal regulation, cannot serve as the basis for a *Bowman* claim.

However, the undersigned's analysis is not yet complete. Applying the most liberal of reads to Plaintiff's complaint, the undersigned will consider Plaintiff's contention that his *Bowman* claim is based upon a violation of a Virginia statute: The Wage Payment Act, Va. Code § 40.1-29. (Pl.'s DPC Opp'n at 9-10; Hr'g Tr. 15:6-11, Nov. 30, 2018.) This argument, too, will fail.

The Wage Payment Act prohibits, in part, an employer from withholding any part of an employee's wages except for taxes without the employee's written authorization. Va. Code. § 40.1-29(C). Some courts, including some in this district, previously held that this statute could serve as grounds for a *Bowman* claim. *See Blanchard v. Capital One Servs., LLC*, 91 Va. Cir. 320, 2015 WL 12591838, at *3-4 (Va. Cir. Oct. 26, 2015) (collecting cases). However, the recent Virginia Supreme Court decision in *Francis* casts doubt on the appropriateness of using the Wage Payment Act to support a *Bowman* claim.

In *Francis*, the Virginia Supreme Court made clear that if an employee alleges a scenario one *Bowman* claim, that employee must show "that the termination of employment *itself* violated the stated public policy" of the relevant statute. 796 S.E.2d at 191. Therefore, when analyzing a scenario one claim, a court must "discern what right was conferred on an employee by statute, and then whether the employer's termination of employment violated the public policy underlying that right." *Id.* The employee in *Francis* had brought a *Bowman* claim alleging that she was fired for exercising her right to obtain a protective order in accordance with the relevant Virginia statutes. *Id.* at 189-90. The Virginia Supreme Court ultimately found that the stated public policy of the protective order statutes was the "protection of health and safety" and that the statutes contained no corresponding public policy of "protecting the exercise of the right to seek a protective order." *Id.* at 191-92. As a result, the employee could not make out a scenario one claim because the employee could not show how the termination violated the policy of protecting health and safety. *Id.* at 192.

Since *Francis*, several federal courts have again entertained *Bowman* claims involving potential Wage Payment Act violations. *See Briggman v. Nexus Servs. Inc.*, Civil Action No. 5:18-cv-00047, 2018 WL 6517464, at *6 (W.D. Va. Dec. 11, 2018); *Vasquez v. Whole Foods Market,*

*Inc.*, 302 F. Supp. 3d 36, 56-58 (D.D.C. 2018). In those cases, the courts held that the Act could no longer be read to support a *Bowman* claim. The *Vasquez* decision relied heavily on a 2012 Virginia Court of Appeals decision analyzing the Wage Payment Act. In interpreting the statute, the court of appeals determined that the Act served as "a regulatory not a remedial statute," and, consequently did not provide for a private cause of action for an employee. *Mar v. Malveaux*, 732 S.E.2d 733, 738 (Va. Ct. App. 2012). Most importantly, the court held that the "purpose of the Wage Payment Act *is to establish the public policy of the Commonwealth* as to the manner in which employers pay wages to employees." *Id.* (citation omitted) (emphasis added). Per *Mar*'s reading of the statute, the court in *Vasquez* concluded that "[a]t most, the Wage Payment Act establishes an employee's right regarding when and how to get paid. There is no correlative public policy in the Act that protects an employee's 'exercise' of her right to receive wages." 302 F. Supp. 3d at 57-58.

The undersigned finds *Vasquez* persuasive and adopts its reasoning. The Wage Payment Act does not include a public policy of protecting an employee's ability to exercise their right to receive wages. Instead, per *Mar*, the Act only establishes a regulatory scheme for how employers should pay their employees. Accordingly, Plaintiff's termination, caused allegedly by his attempt to exercise his right to receive his full wages, in no way violated a public policy. Similarly, the Act does not "set forth an explicit public policy necessary to prosecute a *Bowman* claim under Scenario 2." *Briggman*, 2018 WL 6517464, at *6. Therefore, the undersigned finds that Plaintiff's *Bowman* claim should be dismissed.

## V.  RECOMMENDATION

For the aforementioned reasons, the undersigned U.S. Magistrate Judge recommends that Defendant DPC's Corrected Motion to Dismiss (Dkt. 7) be GRANTED and that Counts I and III

be dismissed with prejudice. Further, the undersigned recommends that Plaintiff be granted leave to amend Count II and that Defendant SPFPA's Motion to Dismiss (Dkt. 16) be DENIED WITHOUT PREJUDICE.

## VI.  NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28

U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen

(14) days of its service.  Failure to object to this Report and Recommendation waives appellate

review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of

record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

April 16 , 2019
Alexandria, Virginia

21