# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | | |
|---|---|---|
| JOSEPH L. GERALD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:18-cv-1154 |
| | ) | |
| DIVERSIFIED PROTECTION | ) | |
| CORPORATION, *et al.*, | ) | |
|     Defendants. | ) | |

## ORDER

In this labor dispute, Defendants Diversified Protection Corporation ("DPC") and Security, Police and Fire Professionals of America's ("SPFA") filed motions to dismiss for failure to state a claim. Those motions were referred to a magistrate judge, pursuant to 28 U.S.C. § 636, who, in turn, issued a Report and Recommendation ("Report") recommending that: (i) Count I, which alleges a breach of the collective bargaining agreement ("CBA"), be dismissed; (ii) Count II, which alleges a breach of the duty of fair representation under § 301 of the Labor Management Relations Action, 29 U.S.C. § 185(a), be dismissed with leave to amend; and (iii) Count III, which alleges wrongful termination under *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985),[1] be dismissed.

Plaintiff Joseph L. Gerald and defendant SPFA timely filed objections to the Report; defendant DPC filed no objections. Specifically, plaintiff objected to certain factual conclusions in the Report and, as the following discussion reflects, although some of those objections are

---

[1] The Supreme Court of Virginia has recognized a narrow exception to Virginia's employment-at-will doctrine, which permits common law claims for wrongful terminations that violate Virginia's public policy. *See McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823, 828 (E.D. Va. 1998).

well founded they do not affect the results recommended by the magistrate judge. Moreover, as discussed *infra*, the Report correctly determined that each count of the complaint should be dismissed. The Report must be modified, however, because amendment of the complaint would be futile and the magistrate judge's recommendation to the contrary cannot stand. Accordingly, SPFA's objection will be sustained. Thus, for the reasons that follow: (i) plaintiff's objections will be sustained in part and overruled in part; (ii) SPFA's objection will be sustained; and (iii) the complaint will be dismissed with prejudice.

## I.

Except where noted, the Court has adopted the Report's factual findings. Plaintiff worked as a guard for DPC, and its predecessor, in Crystal City, Virginia for at least seven years. SPFA the labor organization that served as the bargaining representative for plaintiff and others employed by DPC. Between September 30, 2014 and September 29, 2017, the relationship between DPC and SPFA was governed by a CBA, which contained discharge and disciplinary provisions as well as grievance and arbitration procedures. Nothing in the CBA indicated that any disciplinary or grievance procedures survived the expiration of the CBA.

After the CBA expired in September 2017, DPC and SPFA did not immediately enter into a new CBA. On April 6, 2018, while at work, plaintiff noticed that the pay deposited into his bank account had been reduced by half. Plaintiff immediately began notifying his bank and vendors that plaintiff's bank account would lack necessary funds to cover some automatic payments. Plaintiff used his cell phone to make these calls. While plaintiff was on hold with his bank, an employee of the site that plaintiff guarded observed plaintiff on his cell phone and reported plaintiff to DPC. DPC's project manager directed plaintiff to provide a written statement describing plaintiff's conduct, which plaintiff did.

On April 10, 2018, DPC suspended plaintiff for approximately two weeks, while it investigated. During plaintiff's suspension, plaintiff requested that SPFA's representative, Joseph McCray ("McCray") process a grievance for plaintiff. McCray repeatedly stated that he was attempting to resolve the issue between plaintiff and DPC but could not do so because there was no CBA in place. McCray also stated that plaintiff was vulnerable to termination because of plaintiff's disciplinary history. McCray harbored substantial animosity towards plaintiff, stemming from McCray's interference in, and contribution to, the dissolution of plaintiff's marriage.[2]

On April 27, 2018, DPC terminated plaintiff's employment for: (i) use of a personal cellular phone on post; and (ii) being inattentive to duty. DPC represented to plaintiff that "there was a landline available for you to use which would not have resulted in discipline."[3] Plaintiff claims that he was not inattentive to his duty and that his termination constitutes a material breach of the CBA. Plaintiff further claims that his firing was in retaliation for plaintiff's complaints regarding violations of federal and state laws.

DPC and SPFA entered into a new CBA on July 29, 2018.

## II.

In the Report, the magistrate judge recommends that each count of the complaint be dismissed, and that plaintiff be permitted only Count II. Plaintiff objects to the Report's

---

[2] The Report states that plaintiff interfered in McCray's marriage. Plaintiff objected to this misstatement of fact. Plaintiff correctly points out that he has alleged that it was McCray who interfered with plaintiff's marriage. Accordingly, plaintiff's misstatement of fact objection must be sustained, but the result reached is unaffected by this factual objection.

[3] Plaintiff objected to the omission of this allegation from the Report. Accordingly, plaintiff's misstatement of fact objection must be sustained, but the result reached is unaffected by this factual objection.

recommendation on each of the three counts of the complaint. SPFA objects only to the recommendation that plaintiff be permitted to amend Count II. Each count will now be addressed in turn.

### A.

Count I alleges a breach of the CBA between DPC and SPFA.[4] The Report recommends dismissing Count I because an expired CBA cannot support a breach of contract claim. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991) ("[A]n expired contract has by its own terms released all its parties from their respective contractual obligations."). In his objection, plaintiff does not dispute that the CBA expired on September 29, 2017 and that the expired CBA cannot form the basis for his § 301 claim. Thus, plaintiff only objects that the Report did not permit plaintiff to proceed on his claim that DPC's cell phone policy created an implied contract that may be enforced under § 301 or to amend Count I to state such a claim.[5] Because plaintiff may not proceed on an implied contract theory under § 301 following the expiration of the CBA, the Report correctly found that Count I should be dismissed without leave to amend. Accordingly, plaintiff's objection will be overruled, and Count I will be dismissed

---

[4] This claim must be brought as a hybrid § 301/fair representation claim under the National Labor Relations Act and thus requires proving both that DPC breached the CBA and that the SPFA breached its duty of fair representation. *See DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164–65 (1983) (claims are "inextricably interdependent" and to prevail against either the company or the union the plaintiff must prove both claims).

[5] Although plaintiff apparently sought to assert a version of this argument in his opposition to the motions to dismiss and at the hearing before the magistrate judge, plaintiff did not fully articulate the basis for his "implied contract" theory until plaintiff filed his objection. The magistrate judge understood "[p]laintiff's argument to be that the underlying cell phone policy serves a further proof that his termination was without just cause in contravention of Article 12 of the first CBA." Report at 8 n.3. Plaintiff's objection now makes clear that plaintiff's argument is that the cell phone policy provides a separate basis for an implied contract theory. This argument fails for the reasons stated herein.

with prejudice.

To begin with, the complaint never references DPC's cell phone policy as implied or interim contract.[6] Plaintiff claims that his vague references to an "employment contract" in the complaint are sufficient to state an implied contract claim under § 301 based on DPC's cell phone policy. They are not. Plaintiff's allegations give no indication that plaintiff is asserting a § 301 claim based on an implied contract. Moreover, the complaint makes plain that Count I relies on "an enforceable expectation that his employment would continue according to the terms of the CBA" and on DPC's alleged material breach of the CBA. Because the complaint does not allege plaintiff's implied contract theory, the Report properly found that Count I should be dismissed under Rule 12(b)(6).

Next, plaintiff asserts that he should be given the opportunity to amend to allege his implied contract theory. Plaintiff states that the *only* allegation that could be added to Count I is an allegation that the cell phone policy, although not a part of the CBA, was in force and constituted an implied contract that may form the basis of a § 301 claim. Plaintiff's proposed amendment, however, does not solve his Rule 12(b)(6) problem; for as the Supreme Court has recognized, § 301 "provides the federal courts with jurisdiction over controversies *involving collective-bargaining agreements.*" *United Steelworkers of Am., AFL-CIO v. Rawson*, 495 U.S. 362, 368 (1990) (emphasis added); *see also Richardson v. Kruchko & Fries*, 966 F.2d 153, 156 n.* (4th Cir. 1992) ("§ 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), gives

---

[6] Plaintiff objects that the Report's limited discussion of DPC's cell phone policy is a "significant factual error." But plaintiff did not plead any facts related to DPC's cell phone policy. The complaint only makes vague references to "the written employment policies of Diversified." Accordingly, the cell phone policy is only relevant insofar as it impacts whether plaintiff may amend Count I. This objection also does not change the result, because, as discussed *infra*, plaintiff cannot state a claim based on his implied contract theory.

both federal and state courts subject-matter jurisdiction over suits alleging a breach of the collective bargaining agreement between an employer and a labor organization.").

Here, plaintiff concedes that there was no CBA in place. Instead, plaintiff argues, based on *United Paperworkers Int'l Union, Local 247 v. Champion Int'l Corp.*, 81 F.3d 798 (8th Cir. 1996), that DPC's cell phone policy constituted an enforceable interim agreement.[7] In *Champion*, the Eighth Circuit suggested that an interim agreement may form the basis of a § 301 claim, where: (i) the parties have bargained to impasse; (ii) there is evidence of an employer's intent to make an offer; and (iii) there is evidence of the union's intent to accept that offer above and beyond the fact that the employees continued to work. *See id.* at 803. Significantly, the parties point to no Fourth Circuit cases applying this standard.

In any event, it is unnecessary to determine whether the *Champion* standard is correct and should be applied in this case, for even assuming *arguendo* that the *Champion* standard is correct, plaintiff's proposed amendment does not satisfy that standard. Thus, amendment is futile. Plaintiff does not suggest that DPC and SPFA reached an impasse in their labor negotiations and certainly does not allege that an impasse occurred on matters other than the cell phone policy. Moreover, from the facts alleged, it is unlikely that plaintiff could allege in good faith that DPC and SPFA negotiated to impasse. DPC and SPFA entered into a new CBA on

---

[7] Plaintiff also cites *Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368 (7th Cir. 1984) for the proposition that an employee may sue his union for breach of a standalone implied agreement and *Amalgamated Assoc. of Street, Elec. Railway & Motor Car Ees. v. Lockridge*, 403 U.S. 274 (1971) for the proposition that a § 301 claim may proceed where there is no breach of a collective bargaining agreement. Those cases do not stand for the propositions cited. In *Lewis*, the Seventh Circuit recognized that "[i]ndividual employees *may only* sue under section 301(a) 'for a breach of a promise embedded in the *collective bargaining agreement* that was intended to confer a benefit upon the individual [employee.]'" *Id.* at 1373 (emphasis added). Likewise, in *Lockridge*, the Supreme Court again recognized that § 301 "authorized federal courts to exercise jurisdiction over suits brought to enforce *collective-bargaining agreements*" and promises embedded in the CBA. *Id.* at 298-99 (emphasis added).

July 29, 2018, less than a year after the expiration of the old CBA and mere months after plaintiff's termination. Also troubling is the absence of any allegations regarding the timing of an offer by DPC or of an acceptance by SPFA to make the cell phone policy an interim agreement. Nor does plaintiff make any allegations regarding the specific provisions of this purported interim agreement. Instead, plaintiff's proffered amendment rests on the entirely conclusory allegation that the cell phone policy "constituted an agreement." This allegation need not be credited. *See Vaughn v. Milliken & Co.*, No. 7:13-cv-1783, 2014 WL 505296, at *2 (D.S.C. Jan. 30, 2014) ("[G]eneral and conclusory allegations are not sufficient to establish the existence of an employment contract."). Despite plaintiff's purported reliance on the *Champion* standard, plaintiff does not allege any of facts necessary to satisfy that standard. To the contrary, the current complaint suggests that the cell-phone policy *was not* a contract, but a unilateral policy, because plaintiff describes it as one of the "written employment policies of *Diversified*."

Because plaintiff concedes that the CBA expired before his termination, the Report appropriately determined that plaintiff's § 301 claim could not rely on a breach of the CBA. Moreover, because the complaint does not allege that DPC's cell phone policy constituted an interim agreement, the Report could not recommend denying the motions to dismiss on that ground. Furthermore, plaintiff's proffered amendment is woefully inadequate to establish the existence on any interim or implied agreement, even under the non-binding *Champion* standard. Accordingly, plaintiff's objection is overruled, and Count I will be dismissed with prejudice.

## B.

In Count II, plaintiff makes the second half of his hybrid § 301 claim, alleging a breach of the duty of fair representation for SPFA's failure to file a grievance on plaintiff's behalf. In the Report, the magistrate judge recommended that Count II be dismissed because plaintiff's

failure to prevail on the first prong of his claim (breach of CBA) necessitates the finding that there was no breach of the duty of fair representation. *See DelCostello*, 462 U.S. at 164 (claims are "inextricably interdependent"). The Report recommended that plaintiff be permitted to amend the complaint to state a breach duty of fair representation claim based on SPFA's failure to file an unfair labor practice ("ULP") with the National Labor Relations Board ("NLRB"). Plaintiff objects only insofar as plaintiff claims that Count I should not have been dismissed. As discussed above, Count I will be dismissed with prejudice. Accordingly, plaintiff's objection will be overruled. SPFA objects that plaintiff should not be granted leave to amend Count II, because SPFA was not the exclusive bargaining representative for plaintiff. For his part, plaintiff failed to respond to SPFA's futility argument or suggest any amendments that he could make to state a duty of fair representation claim. Because plaintiff could have filed an ULP with the NLRB himself, SPFA is correct and its' objection will be sustained. Accordingly, Count II will be dismissed with prejudice.

The Report recommends that plaintiff should be permitted to amend Count II to allege a breach of duty of fair representation claim against SPFA based on SPFA's failure to file a ULP. This recommendation is incorrect; there is no duty of fair representation unless SPFA was the exclusive bargaining representative for plaintiff. It was not.

In this respect, the Supreme Court has made clear that "[a] union's statutory duty of fair representation traditionally runs only to the members of its collective-bargaining unit, and is coextensive with its statutory authority to act as the *exclusive representative* for all employees." *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 376 n.22 (1984) (emphasis added). Thus, where a union is not the exclusive representative of an employee, courts have found that there is no duty of fair representation. *See, e.g., Dycus v. NLRB*, 615 F.2d 820, 827 (9th Cir.

1980) ("A labor organization that is not the exclusive representative of a bargaining unit, however, owes no duty of fair representation to the members of the unit."); *Am. Fed. Of Govt. Ees. AFL-CIO, Local 916 v. FLRA*, 812 F.2d 1326, 1328 (10th Cir. 1987) ("If, on the other hand, an employee has the right to choose a representative other than the union, . . . there is no basis for requiring the union to furnish its services.").

Here, plaintiff had the ability on his own to file a ULP with the NLRB. *See* 29 C.F.R. § 102.9 ("[A]ny person may file a charge alleging that any person has engaged in or is engaging in any unfair labor practice affecting commerce."). On similar facts, the Northern District of Indiana, in *Steele v. Brewery & Soft Drink Workers, Local 1162*, No. 76-cv-142, 1980 WL 2218 (N.D. Ind. Dec. 4, 1980), noted that, "[t]o the extent that plaintiffs could have filed charges with the NLRB themselves, the union was not their exclusive representative." *Id.* at *36. Courts have even applied this rationale to the grievance process, where employees have the power to initiate grievances without union involvement. *See Garity v. APWU, AFL-CIO*, No. 11-cv-1110, 2012 WL 215036, at *5 (D. Nev. Jan. 24, 2012) (holding that the union was not liable for failing to file a grievance because "the Local did not hold the 'sole power' to access Plaintiff's contractual remedies."). This principle – that unless the union is the exclusive representative there is no duty of fair representation– applies here.

Because plaintiff himself could have pursued an unfair labor practice before the NLRB, SPFA was not his exclusive representative and there can be no breach of the duty of fair representation. Nor does plaintiff make any argument to the contrary. Thus, amendment of Count II would be futile and SPFA's objection must be sustained. Accordingly, Count II must be dismissed with prejudice.

## C.

In Count III, plaintiff seeks to bring a *Bowman* claim based on a violation of a federal public policy. The Report recommended dismissal because the Supreme Court of Virginia in *Bowman* made clear that there was only a narrow exception to employment-at-will for violations of public policy rooted in *state* law. To begin with, Plaintiff argues that "Virginia can have no possible interest in immunizing an employer who terminates an employee in a way that punishes the exercise of federal rights." Plaintiff's argument for expanding the reach of *Bowman* is unpersuasive. Simply put, federal statutes do not provide an expression of *Virginia*'s public policy. *See McCarthy*, 999 F. Supp. at 829; *Baiden-Adams v. Forsythe Transp., Inc.*, 969 F. Supp. 2d 422, 433 (E.D. Va. 2013). Where federal law is violated federal remedies may be sought. Accordingly, the Report correctly recommended dismissing Count III and plaintiff's objection based on extending *Bowman* is overruled.

Next, plaintiff claims that he should be permitted to amend Count III to clarify the source of the public policy on which he bases his *Bowman* claim and to assert a claim based on the Wage Payment Act, Va. Code § 40.1-29. Specifically, Va. Code § 40.1-29 prohibits an employer from withholding any part of an employee's wages, except for taxes, without the employee's permission. In the Report, the magistrate judge found that plaintiff could not rely on Va. Code § 40.1-29 because of the Supreme Court of Virginia's decision in *Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 796 S.E.2d 188, 190-91 (Va. 2017). In *Francis*, the Supreme Court of Virginia held that a plaintiff must show that the "termination *itself* violated the public policy." *Id.* at 191 (emphasis added). The Supreme Court of Virginia held that the *Francis* plaintiff failed to state a *Bowman* claim because she could not show that her termination violated a policy meant to protect health and safety. In the wake of *Francis*, courts

analyzing *Bowman* claims which purport to be based on Va. Code § 40.1-29 have held that: "At most the Wage Payment Act establishes an employee's right regarding when and how to get paid. There is no correlative policy in the Act that protects an employee's 'exercise' of her right to receive wages." *Vasquez v. Whole Foods Market, Inc.*, 302 F. Supp. 3d 36, 57 (D.D.C. 2018); *Briggman v. Nexus Servs. Inc.*, No. 5:18-cv-47, 2018 WL 6517464, at *6 (W.D. Va. Dec. 11, 2018) (holding that that Va. Code § 40.1-29 does not "set forth an explicit public policy necessary to prosecute a *Bowman* claim"). Accordingly, plaintiff cannot rely on Va. Code § 40.1-29 as a basis for his *Bowman* claim.

Plaintiff does not address any of the authority cited in the Report regarding the futility of amending the complaint to bring a *Bowman* claim under Va. Code § 40.1-29. Nor does plaintiff offer any other state policy that could support a *Bowman* claim here. *See Hart v. Hanover Cnty. Sch. Bd.*, No. 3:10-cv-794, 2013 WL 1867388, at *3 (E.D. Va. May 2, 2013) ("To avoid denial of leave to amend based on futility, a plaintiff must allege facts in her pleading that would establish each of the required elements sufficient to survive a motion to dismiss."). Because plaintiff cannot base a *Bowman* claim on any of the federal or state statutes and regulations on which he relies, plaintiff's objection with respect to Count III is overruled and Count III will be dismissed with prejudice.

For the reasons stated and for good cause shown,

It is hereby **ORDERED** that the Report and Recommendation (Doc. 25) is **ADOPTED IN PART** and **MODIFIED IN PART** as set forth above.

It is further **ORDERED** that plaintiff's objection to report and recommendation (Doc. 28) is **SUSTAINED IN PART AND OVERRULED IN PART**. Specifically, the objection is sustained with respect to the two minor factual errors in the Report and overruled in all other

aspects.

It is further **ORDERED** that SPFA's objections to report and recommendation (Doc. 27) are **SUSTAINED**.

It is further **ORDERED** that defendants' motions to dismiss (Docs. 7, 16) are **GRANTED** and the complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**.

The Clerk of Court is directed to provide a copy of this Order to all counsel of record and to place this matter among the ended causes.

Alexandria, Virginia
June 25, 2019

/s/
T. S. Ellis, III
United States District Judge